ENGEL, Circuit Judge.
The substantive issue in these appeals is whether the government’s rights as a recorded tax lienholder continued to be covered by the provisions of the federal insolvency statute, 31 U.S.C. § 3713, after involuntary bankruptcy proceedings were filed against the insolvent taxpayer, or whether after the bankruptcy filing, those rights were governed by the priorities established in the Bankruptcy Reform Act of 1978 (“Bankruptcy Code”). We hold that in such circumstances the priorities established in the Bankruptcy Code must prevail. We further hold that in any event, the unusual procedural posture of this case at the time of the lower court’s decision requires a vacation and remand of that court’s order.
I.
This litigation commenced in the district court when plaintiff NLT Computer Services Corporation (“NLT”) filed an interpleader action naming as defendants the taxpayer Capital Computer Systems, Inc. (“Capital”), the United States, and several creditors of the taxpayer, including appellants Richard Distributing Company (“Richard”) and Gallo Sales Company (“Gallo”). Because the facts are complicated and are contained in a stipulation filed in the district court, we summarize only briefly those facts necessary to our decision.
In 1981, NLT purchased certain computer software and licenses from Capital. When it commenced this interpleader action in the district court on June 21, 1982, NLT still owed Capital $150,000 on the purchase price, the balance of which was to be paid in two $75,000 installments on June 30 and December 31, 1982. NLT admitted that the payments were due as specified in its purchase contract and was otherwise willing to honor its obligations, but it faced the competing claims of several creditors of Capital, each claiming a prior right in the $150,000.
The United States claimed that the monies due were subject to a recorded government notice of tax levy to secure the payment of over $500,000 in withholding taxes which Capital had failed to pay over a five year period. Appellant Richard asserted its rights to the monies as a judgment creditor of Capital; Richard had obtained a valid judgment against Capital and had commenced garnishment proceedings against NLT in the Chancery Court of Davidson County, Tennessee to satisfy that judgment. Appellant Gallo claimed its rights as a secured creditor of Capital; Capital had conveyed a security interest in the monies to Gallo during a suit which Gallo had brought against Capital in a Tennessee state court for breach of contract damages. Gallo asserted that its secured interest was valid and that a proper financing statement had been recorded on January 18, 1982.
NLT paid each of the $75,000 sums into the district court’s registry as they became due, and those funds were placed out at interest pending resolution of the several claims against them. NLT then withdrew from further active participation in the case.
After a certain amount of discovery had been taken and one trial date canceled, the district court on October 29, 1982 ordered hearing on the government’s motion for summary judgment reset for 1:00 p.m., January 10, 1983. The court also ordered the parties to submit a stipulation of the facts and appropriate briefs before the hearing. When the parties appeared before the court on January 10, counsel for Richard and for one other creditor, Testa Distributing Company, Inc. (not herein a party), announced to the court that on that same morning they had filed an involuntary petition in bankruptcy against Capital. They then asserted, for the first time, that the court was stayed from further proceedings in the interpleader matter by virtue of the automatic stay provisions of 11 U.S.C. § 362. They also contended that the filing of the petition had removed the instant case from the effect of the insolvency statute, 31 U.S.C. § 3713, because that statute specifically provided that the priority estab *1256 lished in it does not apply in a “case under Title 11,” 31 U.S.C. § 3713(a).
In an opinion filed on January 31, 1983, the district court held that it was not prohibited from proceeding upon the merits of the government’s claim despite the automatic stay provisions of 11 U.S.C. § 362, because it possessed the power to withdraw the order of reference of the involuntary proceedings to the bankruptcy court and then lift the automatic stay provisions which would otherwise apply. NLT Computer Services v. Capital Computer Systems, 31 B.R. 960 (M.D.Tenn.1983). The court withdrew the reference, lifted the stay, and proceeded to consider the merits of the government’s motion. It determined that in this case, the government’s rights under the general insolvency statute were unimpaired by the intervening involuntary bankruptcy proceedings against Capital because, in its view, the interpleader action was not a “case under Title 11” as that term was incorporated into section 3713(a). It, therefore, evaluated the competing rights of the several claimants to the fund under the provisions of section 3713 and decided that the government’s claim was entitled to priority over the claims of the debtor and the other defendants. As the government’s claim was admittedly greater in amount than the sum available in the interpleader action, the district court entered a judgment directing payment to the United States of all the funds on deposit with the court. Id.
II.
We first address the unusual procedural posture of this case. For accuracy, we quote at length from the opinion of the district court:
At the January 10, 1983 hearing, counsel for Testa and Richard announced that they had, that morning, filed an involuntary petition in bankruptcy against Capital. Two questions are thereby presented: first, whether this Court is stayed from proceeding in this matter by 11 U.S.C. Sec. 362 (the “automatic stay”); secondly, whether the filing removes this case from the effect of Section 3713(a) because of the last sentence of that statute.
The Court concludes that, for several reasons, the automatic stay does not prevent continuation of this action. First, it appears that the automatic stay is not applicable by the express terms of 11 U.S.C. Sec. 362. The several subsections of Section 362(a) stay acts and judicial proceedings “against” the debtor and/or property of the estate. This interpleader action is certainly not one “against” the debtor, especially where the debtor has specifically disclaimed any interest in the funds. In addition, the funds in question are not property of the estate because the debtor claims no interest in them and because Capital’s right to payment, which gave rise to the funds, had been previously levied upon by the United States. See Cross Electric v. United States, 664 F.2d 1218 (4th Cir.1981).[3]
An important consideration in this matter is this Circuit’s adoption of a model rule to deal with bankruptcy matters in light of the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held the jurisdictional grant contained in the Bankruptcy Code unconstitutional. In essence, the rule provides that although the District Court has jurisdiction over bankruptcy cases, all bankruptcy cases are referred to the bankruptcy court for disposition, with certain limitations on the powers of the bankruptcy judges. One of these limitations is that a bankruptcy judge may not conduct a proceeding to enjoin a court. Rule (d)(1). Moreover, the rule gives this Court the power to withdraw the reference at any time upon its own motion. Therefore, this Court, at the hearing, withdrew the reference to bankruptcy court regarding the involuntary petition filed against the debtor; lifted the automatic stay (if it applies at all) as it pertains to this interpleader action; and remanded the bankruptcy case to the bank *1257 ruptcy court for any further proceedings in that matter.
The second question is whether the filing of the bankruptcy petition removes this case from the effect of Section 3713(a), as contended by Testa and Richard. The last sentence of the statute provides: “the priority established under this section does not apply, however, in a case under title 11.”
But this interpleader action is not one “under title 11.” The complaint herein was filed on June 22, 1982, and is in no way related to the bankruptcy petition filed on January 10, 1983, under Title 11.
The Court is unaware of, and neither Testa nor Richard have cited, any statutory provision or other authority which would somehow convert the instant inter-pleader action into one “under Title 11” simply because an involuntary bankruptcy petition has been filed against a party to this proceeding. The Court therefore finds that the filing of the petition does not stay this action.
NLT Computer Services v. Capital Computer Systems, 31 Bankr. 960, 961-62 (M.D.Tenn.1983).
We have nothing before us in the record prepared for this appeal to substantiate the pendency of involuntary bankruptcy proceedings. Also, the record contains little to explain the procedures which the district judge employed in reaching his conclusion that he was empowered to proceed in the interpleader action and to disregard the automatic stay provisions of section 362. Other than the district court’s opinion, the only reference to the bankruptcy case is found in entry number 56 on the district court docket sheet for the interpleader action; that entry provides:
ORDER: (1) Order of Reference to
Bankruptcy Court in the involuntary bankruptcy case involving Capital Computer Systems, Inc., which was initiated by the filing of a petition on 1-10-83 is WITHDRAWN, that the automatic stay provided in 11 U.S.C. Sec. 362 is lifted as it relates, if at all, to this interpleader action; and that the bankruptcy case is REMANDED to Bankruptcy court for any further proceedings in that matter, (2) Clerk shall cause funds on deposit with the Court in this cause to be paid to United States and (3) Case DISMISSED. Case Notice No. 36 Cy of Order mailed to Smith, Shearon, Sutton, Rice, Brown, Ramer, Davis, Cresswell, and Dodson.
NLT Computer Services Corp. v. Capital Computer Systems, Inc., et al, No. 82-3558, Civil Docket Continuation Sheet Entry No. 56 (M.D.Tenn.). Thus, the opinion of the trial court and the docket entry recording that decision are the only two documents of which we are aware to reflect the action taken by the trial judge. We hold that as a matter of law these documents do not show that the judge in this case had been conferred the power to proceed to the merits of the government’s motion. We find that this error alone would require us to vacate the district court’s judgment.
We must observe at the outset that we have considerable sympathy for the dilemma which the trial judge faced. It is difficult to fault him for proceeding as he did. All of the parties had known for months that January 10 was the date set for hearing on the motion for summary judgment, a hearing which could have disposed of the case on the merits. Yet, two of the parties saw fit to wait until the morning of the January 10 hearing to commence the involuntary bankruptcy proceedings and then take advantage of that action at the hearing. It is not surprising that their efforts were not met with great enthusiasm by the trial judge. Nevertheless, bankruptcy petitions, whether voluntary or involuntary, are never filed unless the peti *1258 tioner perceives some benefit from the act, and we believe that the creditors’ motivation in this case is neither worse nor better than that which normally triggers such filing. However frustrating the creditors’ timing might have been, we are unable to agree with the innovative method of dealing with this dilemma described in the district court’s opinion. In our view, the district court’s action short-circuits the orderly procedure for the administration of bankruptcy stays by failing to recognize the legal effect of both the filing of the involuntary bankruptcy proceedings and the issuance of the automatic stay.
We assume, as did the parties and the trial judge, that the involuntary bankruptcy petition was in fact filed. Yet, in our view, the fact that bankruptcy proceedings are pending in a specific United States district court does not confer upon any judge sitting in that court the right to lift an automatic stay as to any other proceedings before him. The Bankruptcy Act and rules carefully set forth the procedures for the administration of bankruptcy proceedings. The stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted. See Clay v. Johns-Manville Sales Corp., 722 F.2d 1289 (6th Cir.1983), cert. denied, — U.S. -, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984).
It is true, as the trial judge observed, that Northern Pipeline Construction Company v. Marathon Pipe Line Company, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), found the expanded jurisdiction granted bankruptcy courts under the Bankruptcy Code unconstitutional. After Northern Pipeline, the Sixth Circuit adopted a recommended emergency rule which was in effect at the time of these proceedings in the district court. Under that rule, all bankruptcy cases were referred automatically to the bankruptcy court for disposition. Emergency Interim Rule § (c)(1); White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 256, 265-66 (6th Cir.1983). The emergency rule also gave the district court the power to withdraw the reference at any time on its own motion. Emergency Interim Rule § (c)(2); White Motor Corp., 704 F.2d at 256, 266. However, while broad power was given the district court to withdraw the reference to a bankruptcy judge, we see nothing in the interim rule or in the Bankruptcy Code which could ever be construed as authorizing the continuation of the interpleader suit without some appropriate action having first been taken in the bankruptcy case itself. See 2 Collier on Bankruptcy 11362.-08 (15th ed. 1984); see also In re Nashville White Trucks, Inc., 731 F.2d 376, 378 (6th Cir.1984). In our view, the trial judge in these proceedings was in a position no different from that of any judge presiding in any other pending federal, state, or local court proceedings which could affect the assets of the bankrupt. It certainly cannot seriously be claimed that were such a suit pending in another district court or in a state court, the judge of that court could proceed to decide that suit on the merits without a motion to lift the stay under 11 U.S.C. § 362(d) having first been filed in the bankruptcy proceeding itself.
In addition, the district court’s assumption of jurisdiction over the bankruptcy proceeding was improper under the bankruptcy procedure rules then in effect. While the emergency interim rule authorized the district court to withdraw the reference to the bankruptcy judge, the rule also provided that once withdrawn, the matter “shall be reassigned to a district judge in - accordance with the court’s usual system for assigning civil cases.” Emergency Interim Rule § (c)(2); White Motor Corp., 704 F.2d at 266. Under the local rules of the district court, the withdrawn bankruptcy proceeding should have been assigned to a district judge on a random selection basis. M.D.Tenn. Local Ct.R. 6. The district judge here did not have the authority to assign the bankruptcy action to himself in violation of these procedural rules.
We, therefore, believe that the trial judge was without power to proceed, at *1259 least based on our understanding of the record. Accordingly, we vacate the judgment of the district court and remand for such further proceedings as may be appropriate. Because of our own lack of record, we are unable to finally determine the effect of the involuntary proceedings on the power of the district judge to proceed in the interpleader action.
III.
Having concluded that under the facts as we know them the district judge was without power to reach the merits of the issues on the government’s motion for summary judgment, we would ordinarily be content to vacate the judgment and remand the cause to the district court for further action. Technically, the trial judge’s ruling on the priority question is no longer in effect and any additional comment on our part is arguably unnecessary.
At the same time, our jurisdiction over the appeal is unquestioned. A timely appeal has been taken from an appealable, final judgment, and the power of our court under these circumstances is plenary, at least to the extent we see fit to exercise it. See generally 9 J. Moore, B. Ward & J. Desha Lucas, Moore’s Federal Practice 11110.25[1] (2d ed. 1983), and cases cited therein. Thus, in Alexander v. Aero Lodge, 565 F.2d 1364, 1370 (6th Cir.1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978), we held that once a court of appeals has jurisdiction under 28 U.S.C. § 1292(a)(1) to review an interlocutory order of the trial court granting injunctive relief, it also possesses the power to reach other questions not directly involved in the propriety of the injunction itself. See also Curran v. Merrill Lynch, Pierce, Fenner and Smith, 622 F.2d 216, 230 n. 17 (6th Cir.1980), aff'd on other grounds, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). Citing Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir.1973), we held that the rule limiting review to the narrow questions raised on appeal was “one of orderly judicial administration and not a limit on jurisdictional power.” Alexander v. Aero Lodge, 565 F.2d at 1370. Because we believe that the district court erred in its interpretation of 31 U.S.C. § 3713(a)(2) and that such an interpretation uncorrected would most likely result in a continuation of error on remand and, thus, unnecessarily prolong this litigation, we address that issue.
The federal insolvency statute, 31 U.S.C. § 3713, provides in part:
(1) A claim of the United States Government shall be paid first when—
(A) a person indebted to the Government is insolvent and—
(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
(ii) property of the debtor, if absent, is attached; or
(iii) an act of bankruptcy is committed; or
(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
(2) This subsection does not apply to a case under title 11.
31 U.S.C. § 3713(a). The statute is the latest version of a very old law whose roots go back to the English crown. See extensive discussion of the Act in the light of the priority of federal claims in Plumb, The Federal Priority in Insolvency: Proposals For Reform, 70 Mich.L.Rev. 3 (1971); see also Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905 (1954).
The government and the other parties all appear to agree that the government is in a considerably stronger position under the insolvency statute than it is under the priorities established in the Bankruptcy Code at 11 U.S.C. §§ 545, 724. The government’s first argument is, therefore, that the insolvency statute is applicable here despite its subsection 2 because an inter-pleader action is not a “case under Title 11.” The district judge agreed. As we understand it, the government allows that the priorities of the Bankruptcy Code may *1260 have applied had no interpleader action been pending when the involuntary bankruptcy petition was filed. The government argues, however, that because the inter-pleader action was pending, this is not a “case under Title 11.” Presumably, the government’s contention is that the only “case under Title 11” is the involuntary bankruptcy proceeding itself and that any other litigation which involves assets of the debtor and for which the automatic stay has been lifted would continue to be governed by the insolvency statute. Further, the government asserts that because its claim and the claims of the other creditors exceed the $150,000 involved here, there is no conceivable circumstance in which those monies could be potentially available for use in the administration of the bankruptcy estate. Section 362(d) of the Bankruptcy Code provides:
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.
11 U.S.C. § 362(d).
In the government’s own words:
Thus, under the terms of the statute, relief from the stay is authorized in circumstances in which the debtor has no equity in the property and the property is not necessary for an effective reorganization.
... Because the bankruptcy case is a liquidating proceeding, there can be no question concerning whether the payments under the contract that are involved here were needed for an effective reorganization. There is to be no reorganization. Furthermore, it cannot be doubted that the taxpayer has no equity in the property. The tax liens in this case secured a claim stipulated to be at least $500,000, a sum far in excess of the $150,000 available for distribution in this interpleader action. In short, relief from the automatic stay was clearly justified in this case. Having granted relief from the stay, the District Court correctly recognized that the issues in the interpleader action should be determined under applicable non-bankruptcy law.
Brief for Appellee United States of America at 36 (footnote omitted).
While the government’s position is not altogether implausible, the argument does not adequately take into account the specific amendment by Congress in 1978 which added the language now found in subsection 2 of section 3713(a). That language and what little statutory history we have found all point unmistakably to the purpose of section 3713(a)(2).
All parties concede that the reference to Title 11 (as contrasted to Chapter 11) is a reference to the Bankruptcy Code in general. The language referring to Title 11 was added to the insolvency statute by amendment as part of the Bankruptcy Reform Act of 1978, H.R. 8200, 95th Cong., 2d Sess. § 322(a) (1978). It was one of 36 sections which amended laws other than the bankruptcy statute itself. See H.R. 8200, 95th Cong., 2d Sess. §§ 301-38 (1978). The primary purpose of those amendments was to bring all adjudications of relative priorities in an insolvent’s property within the bankruptcy proceeding. As the House Report states:
Title III of H.R. 8200 contains 36 sections amending other laws of the United States. The general policy followed in title III is to eliminate any special treatment of bankruptcy found in those other laws. Special treatment under current laws takes several forms. First, some laws prescribe preferential treatment of certain claims or creditors in bankruptcy cases, or grant priorities to certain claims or creditors. These special priorities and preferences are inconsistent *1261 with bankruptcy policy, which prescribes equality of distribution for all creditors. When an insolvent estate is liquidated and the proceeds distributed under the bankruptcy laws, myriad other laws that reorder the priorities fixed in the bankruptcy code create confusion and unfairness. It is necessary to bring all of the competing claimants into the same form [sic] for a determination of the appropriate distribution of limited assets. Equality of distribution is the rule in bankruptcy, and supported by long years of strong bankruptcy policy. The bankruptcy code makes exceptions for certain classes of claims, but these exceptions are based on a weighing of all competing interests in the bankruptcy arena. Other laws that grant priorities do so at the expense of other creditors and to the detriment of the orderly liquidation and distribution of a bankrupt estate. Thus, the bill, in the interest of a coherent bankruptcy policy, eliminates special priorities found in other laws and brings all priorities into the bankruptcy code itself
H.R.Rep. No. 595, 95th Cong., 2d Sess. 285, reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6241-42 (emphasis added).
The House Report further indicates that Congress specifically considered the impact of the new Bankruptcy Code on the special priorities granted the government in various statutes and decided that even those priority claims must be decided under the Bankruptcy Code; the Report provides:
The priority most frequently appearing in other laws is a priority for the United States for nontax claims. These claims include contract and tort claims, and loan repayment claims. There have been steady calls for the elimination or reduction of the nontax priority of the United States, especially in bankruptcy cases, where the priority is exercised at the expense of other creditors of the bankrupt. This bill makes the priorities of the United States for nontax claims inapplicable in bankruptcy cases by amendments to the other laws of the United States that grant the priority.
H.R.Rep. No. 595, 95th Cong., 2d Sess. 285, reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6242 (footnote omitted). In this case a tax claim of the United States is involved; therefore, the above-quoted language is not directly on point. However, the insolvency statute on which the government’s priority is based here is not a tax statute; it is generally applicable to all government claims. In addition, although the Bankruptcy Reform Act of 1978 did not eliminate priorities granted government tax liens, the Internal Revenue Code itself establishes that those priorities shall be evaluated under the specific Bankruptcy Code provisions dealing with lien and tax lien priorities. See 26 U.S.C. § 6326(3); 11 U.S.C. §§ 545, 724. Thus, the legislative history shows that as part of the enactment of the Bankruptcy Reform Act, Congress deliberately changed the existing priorities among competing creditors who asserted interests in the property of the bankrupt, including the priorities given government claims, and brought the adjudication of those priorities into the bankruptcy forum.
The determination of those priorities must be considered in light of the overall objectives evident in the substantial revisions which took place in the area of the rights of creditors and debtors under that law as discussed in the above-cited House Report. The revisions were substantial, important, and carefully considered even though in some aspects they did not pass constitutional muster. See Northern Pipeline Construction Company v. Marathon Pipe Line Company, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). It is apparent that although the Supreme Court and federal courts generally were concerned about the constitutionality of employing bankruptcy judges who do not enjoy Article III status, those courts were nonetheless vitally interested in upholding in other respects Congress’ objectives in passing the bankruptcy reform law. The courts believed that the Bankruptcy Code was the result of extensive investigation over a long period of time and should be accorded its full *1262 meaning to the extent lawfully possible. We believe that in few cases has the Supreme Court striven so carefully to avoid striking down an entire statute where a part of it is found unconstitutional. Also, the efforts of the Supreme Court and of the courts of appeals to enact interim rules to permit the orderly administration of bankrupt estates during the resolution of the constitutional issue stand as strong evidence of the courts’ desire to accord as much meaning as practically possible to the intent of Congress. We can only read subsection 3713(a)(2) as evidencing an intent by Congress that whatever rights the United States had under the insolvency statute, those rights were to cease and be replaced by bankruptcy priorities when the bankruptcy intervened. No other construction is satisfactory. The language of subsection 2 is unequivocal.
IV.
In view of our holding, we need not address a number of the more difficult questions which are raised by the parties in this appeal. First, over the objections of Gallo and Richard, the government asks us to consider its argument that the debt owed by NLT was contingent when Gallo and Richard claim to have perfected their liens. The government contends that NLT's debt was contingent when the liens were perfected and even when the inter-pleader action was commenced, because at that time NLT’s obligation to pay the monies was not fixed but, instead, was wholly contingent on NLT’s retained right to withhold funds if Capital had not met certain continuing contractual obligations. Gallo and Richard assert that the facts surrounding this circumstance were not contained in the parties’ stipulation filed in the district court, and they sought (improperly we believe) to supplement the record on appeal in an attempt to prove contrary facts. Since we vacate the proceedings of the district court it is not necessary for us to address this question. Presumably whoever is ultimately charged with the decision on the priorities issue will have a right to reconsider this issue.
For their part, Gallo and Richard claim that the federal insolvency statute was never intended to resolve the claims of creditors asserting secured interests in the same property on which the government has sought to enforce its lien. They argue that outside of bankruptcy, the federal insolvency statute was applied almost exclusively to insolvent decedents' estates or general assignments for the benefit of creditors, general receiverships, liquidations and comparable collection proceedings, see Plumb, The Federal Priority in Insolvency: Proposals For Reform, 70 Mich.L.Rev. 3, 13-14 (1971), and not to resolve the issue of priorities between competing lienholders, see Kennedy, The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien, 63 Yale L.J. 905, 907-08 (1954). These are questions which we need not address here in view of our determination that Congress’ intent was to limit the application of the insolvency statute where the specific provisions of the bankruptcy statute have been triggered by the filing of a bankruptcy action.
Likewise, we do not endeavor to resolve here the many arguments raised by each of the competing claimants concerning the relative merits of its particular right to the proceeds. We do, however, make certain comments as to some of the considerations which may affect the further progress of the case in the hope that they will be of some use to the district court.
We find unpersuasive the government’s assertion that because it claims an overriding lien in all of the proceeds, the monies paid into the court’s registry were somehow robbed of their character as property of the debtor and were, thus, not subject to the Bankruptcy Code with respect to their proper disposition. A similar claim was made by the government under somewhat similar conditions in United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). There the Supreme Court held that under section 542(a) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 542(a), an entity who was *1263 in possession of the debtor’s property was obliged to deliver that property to the bankruptcy trustee after bankruptcy was filed. 462 U.S. at 205, 103 S.Ct. at 2314. In that case the IRS had seized the debtor’s property to satisfy a previously filed tax lien before the debtor filed a Chapter 11 petition. The Court found that the IRS was required to surrender the seized property to the trustee so that it could be administered as part of the debtor’s estate. 462 U.S. at 204-05, 103 S.Ct. at 2314.
In this case, it cannot be doubted, we believe, that had NLT not commenced the interpleader action but rather delivered the monies due to a trustee in bankruptcy, it would be discharged of further obligations and the monies would then be subject to a judicial determination of their ownership within the context of the Bankruptcy Code. When plaintiff NLT, instead, paid the sums due into the registry of the district court, the clerk of that court became the custodian of that property and was charged to hold it until the court properly directed how to dispose of it. In that sense the clerk was acting much like a trustee in bankruptcy. Thus, under our interpretation of United States v. Whiting Pools, Inc. and the relevant statutes, once bankruptcy had intervened, the clerk of the court had a duty as custodian to deliver those funds as property of the debtor to the trustee in bankruptcy for disposition. We believe that the custodian would be so obligated unless the government had actually acquired ownership of the funds prior to the filing of the proceedings in bankruptcy. See United States v. Whiting Pools, Inc., 462 U.S. at 209-10, 103 S.Ct. at 2316.
Whiting Pools could arguably be distin-. guished from the instant case, because there the going-concern value (although not the liquidated value) of the seized property exceeded the amount of the tax lien. 462 U.S. at 200, 211, 103 S.Ct. at 2311, 2316. Here the tax lien is clearly greater in amount than the monies deposited in the interpleader action, and there is less justifiable argument that there could be anything available for the benefit of other creditors. However, the Court’s reasoning was not based upon this factual distinction. The Court notes that Congress chose to provide protection for secured creditors within the Bankruptcy Code rather than through non-bankruptcy remedies. 462 U.S. at 203, 103 S.Ct. at 2312-13. Indeed, the Court takes a very generous view of the scope of the property whose ownership must be adjudicated as part of the bankrupt estate, observing “Congress intended a broad range of property to be included in the estate.” 462 U.S. at 204, 103 S.Ct. at 2313. In addition, the Court wrote: “Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien.” 462 U.S. at 209, 103 S.Ct. at 2316. Thus, the Supreme Court’s apparently broad holding should not be limited to its facts, and distribution of the monies deposited with the district court should be governed by the Bankruptcy Code.
The only purpose of the interpleader action was to determine the ownership of the funds, for the plaintiff therein made no claim to the money and did not dispute its legal obligation to pay. Therefore, the in-terpleader court’s only function was the same as that which is vested in the bankruptcy court under the Bankruptcy Code, that is, to determine the relative priority of competing claims to the fund. As stated earlier, the constitutional requirement that this function be performed by an Article III judge rather than a bankruptcy judge does not, in our judgment, impair the central purpose and plan of the bankruptcy statute. The fact that the interpleader action was pending in the same district court in which the bankruptcy proceedings were filed tends to blur but does not remove the distinctions between the forums, distinctions which would otherwise have been so apparent had the interpleader action been pending in a state court or a different United States district court. We further observe, if only tentatively, that where, as here, there are competing claims to the property of a bankrupt, it was Congress’ probable intent to allow the adjudication of such competing claims and priorities under the Bankruptcy Act within the framework *1264 of the bankruptcy proceedings themselves to the extent that they constitutionally could be heard. However, that adjudication probably must be heard by an Article III judge, unless the parties stipulated otherwise, or in some other proceeding consistent with Northern Pipeline. We think, therefore, the court and the parties must carefully consider whether any further purpose would be served by continuing the independent interpleader action, especially as the sole function of that action is to resolve disputes which Congress contemplated would be adjudicated during the course of bankruptcy proceedings once they were instituted. We pass no final judgment on this question but raise the issue as a matter warranting serious consideration by the parties and the court during the further proceedings in this litigation.
Accordingly, the judgment of the district court is Vacated and the cause Remanded for further proceedings consistent with this opinion.

 Section 362(a)(6) stays "any act to collect * ** * a claim against the debtor which arose before the commencement of the case under this title.” But the legislative history makes clear that this was intended to prevent creditors from harassing debtors after a petition is filed. House Report No. 95-595, 95th Cong., 1st Sess. 340-2 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 49-51 (1978), U.S.Code Cong. & Admin.News, p. 5787.