Irvin H. Harlamert, Jr., Dayton, Ohio, for creditor, Walter M. Litsey.

Harold Jarnicki, Lebanon, Ohio, for debtors, Robert and Kathleen Haas, dba O'Danny Boy, Inc.

**In the Matter of O'DANNY BOY, INC. and Robert Haas and Kathleen Haas, Debtors.**

Bkrtcy. Nos. 3-83-00751, 3-83-00979.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 27, 1983.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

On 1 April 1983 O'Danny Boy, Inc., (ODB) a corporation, by Robert E. Haas, President, filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Only one unsecured creditor was listed, "Walter M. Litsey—Landlord—Am't Owing: $4000." Two additional unsecured creditors were listed by amendment to the schedules on April 27, making total unsecured claims in the amount of $14,820.42. Eight secured creditors were scheduled, totaling $375,425.75. The corporation was in the business of retail sales of ice cream by mobile units.

On 27 April 1983 Robert E. Haas (as President of ODB) and Kathleen M. Haas (as Vice President of ODB) also filed in Chapter 11 as individuals, scheduling basically the same creditors as in the corporation case, including Walter Litsey for $4000.00 delinquency under a lease.

Upon application the cases were consolidated for administration by order entered June 24, 1983.

For a period of time from July, 1981, until the filing of the Chapter 11 petition ODB had occupied a tract of land located at 931 South Perry Street, Dayton, Ohio, under lease from Walter Litsey, for business

operations. This land was encircled by a tall chain link fence, topped by barbed wire, the gate to which was securely locked. At the time of filing Debtors owned considerable equipment still located on these premises. Previously, the parties had been involved in a series of acrimonious altercations over delinquencies in lease payments, resulting in two law suits in the Municipal Court of Dayton and the Common Pleas Court of Montgomery County, Ohio, both of which were pending when the jurisdiction of the Bankruptcy Court was invoked.

On 19 August 1983, Litsey filed another complaint in the Common Pleas Court of Montgomery County, Ohio, seeking judgment against Robert Haas "in the amount of $10,000.00, plus court costs, interest, attorney fees, and for other such relief...." Counsel for the parties had corresponded before the suit in disagreement over whether 11 U.S.C. § 362 required a relief from stay action before suit. This last state court suit alleged damages to the premises at 931 South Perry Street by Haas subsequent to the April 27 Chapter 11 petition filing, and, also, "waste" committed "on the premises by failing to act in accordance with the lease, by vacating the premises and leaving personal property of the Defendant on said premises, by damaging the fence surrounding the premises, by damaging the electrical system on said premises, by damaging the gate on said premises and by leaving debris scattered throughout the premises...."

On 19 October 1983 Robert Haas filed herein a Motion for Contempt against Litsey for violation of the automatic stay imposed by 11 U.S.C. § 362, alleging "that the suit as filed by Mr. Litsey is nothing more than an ongoing, continuing dispute in connection with the lot rental ... meant to further harass, damage, intimidate and pressure the debtor to pay their [sic] respective debt."

Debtor's Plan of Reorganization filed on 3 October 1983 includes Walter Litsey in "Class 3—General Unsecured Creditors—Disputed Claims" as follows:

"Walter Litsey—Arrearage on lease of lot, Dayton, Ohio. Amount owing on Arrearage only $4,000. However, Mr. Litsey has filed a complaint for damages in the Montgomery County Common Pleas Court alleging that the debtor injured his property subsequent to the Chapter 11 being filed. This is in dispute and a counterclaim has now been filed against Mr. Litsey on behalf of the debtor. Originally, the debtors herein had intended to pay this $4,000 arrearage and are still willing to do so through the Plan over the 38 month period. However, due to the new allegations being made by Mr. Litsey and the counterclaim on behalf of debtors, the debtors feel that nothing is owed to Mr. Litsey. It is intended that this disputed claim be heard by the Bankruptcy Court. Therefore, at this time, Mr. Litsey will be paid nothing."

A show cause order issued to Litsey was set for hearing on October 24, 1983, and continued for hearing by request of counsel until November 21, 1983. At the hearing the only evidence submitted in behalf of the respondent was a copy of the complaint in the state court, stipulated as a joint exhibit. The uncontradicted testimony and evidence adduced in behalf of Haas demonstrated that the damages to the fence existed prior to an altercation on the premises after the Chapter 11 petition was filed, when debtors attempted to remove their equipment. At that time Litsey had blocked the gate with a truck and "cherry picker" crane and attempted to have Haas arrested for trespass when the equipment blocking the gate was moved by agents of Haas. The police declined to get involved.

## MEMORANDUM DECISION

Even though there was considerable evidence adduced to question the cause of action for damages filed in the state court by Litsey, the validity of the claim is not now *sub judice*. There also is no question that, at least, a portion of the alleged damages to the leased premises occurred after the bankruptcy court jurisdiction had been invoked.

■ The issue now presented by respondent in a well reasoned Brief is whether or

not there was a violation of Section 362 of the Bankruptcy Code. As argued, "The Creditor contends that Section 362 of the Bankruptcy Code does not stay the commencement of judicial proceedings against a Chapter 11 Debtor based upon a claim arising after the commencement of the bankruptcy case...." In behalf of the respondent it is further urged that once the post bankruptcy damages are reduced to judgment, the creditor would then have to seek relief from the automatic stay before proceeding against the property of the estate. Respondent represents that the state court suit was filed in reliance upon *In Re York,* 13 B.R. 757, 7 B.C.D. 1311, BLR. (CCH) ¶ 68286, 5 C.B.D.2d 132 (Bkrtcy. Maine 1981); *In Re Anderson,* 23 B.R. 174, 9 B.C.D. 1006, BLR. (CCH) ¶ 68760, 6 B.C. D.2d 689 (Bkrtcy.Ill.1982); and *In Re Powell,* 27 B.R. 146, 10 B.C.D. 103, 8 C.B.C.2d 446 (Bkrtcy.Mo.1983).

No brief of legal precedents has been submitted in behalf of the movant.

The case precedents cited in behalf of Litsey appropriately apply a literal interpretation of Section 11 U.S.C. § 362(a)(1) to the facts therein involved.*

To recite the truism from the statute that judicial action to pursue a tort suit for a postpetition claim is not automatically stayed by operation of § 362 (until after judgment) is not a panacea or open invitation in a Chapter 11 Reorganization case for a creditor to blatantly ignore the pervasive and exclusive jurisdiction of the bankruptcy courts over a debtor and the bankruptcy estate.

As a principle of sound, proficient judicial administration it should be apparent to attorneys as officers of the courts that all state and federal courts are too involved with overwhelming litigation to be involved as a tool of the game of "jurisdiction by ambush". Section 362 must be read and interpreted in light of the broader perspective of the major impetus underlying the

enactment of the Bankruptcy Reform Act of 1978, in the face of the myopia of last minute opposition which would have ignored years of Congressional research. It must be noted that there was the purpose of eliminating "the serious delays, expense and duplications associated with the [then] current dichotomy between summary and plenary jurisdiction," and the conclusion that "all civil actions and proceedings arising under or related to cases under title 11 are to be before the bankruptcy judge." See S.Rept. No. 95–989, 95th Cong.2d Sess. 17–18 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5803–5804, Bkr.L.Ed. § 83:3, pp. 27–28.

In analyzing the facts in the instant case, therefore, the old adage of discretion being the better part of valor becomes readily apparent. On the facts there is no question that the Debtor in Possession was forced to invoke (but belatedly) this court's jurisdiction to examine the conduct of respondent Litsey.

Although the lease agreement between the parties was never introduced into evidence, the pleadings and the facts clearly demonstrate that the postpetition altercation stems from the lease and the occupancy by the Debtor in Possession pursuant thereto. In fact, the complaint filed in the state court suit now involved specifically alleges Debtor's "failing to act in accordance with the lease...."

It is further important to note that the proposed Plan of Reorganization specifically treats the claim of Litsey, as should have been anticipated. Hence, whether a claim is to be categorized as "prepetition" or "postpetition" involves the claimant in the mandatory necessity of starting with the examination of the bankruptcy court case file and the negation of any prepetition nexus. The facts *instanter* reveal that the litigation involved in the state court by any interpretation was a continuum of a disputed claim within both the procedural and

---

\* 11 U.S.C. § 362(a)(1) "stays the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

substantive jurisdiction invoked by the Chapter 11 filing. The involvement of the § 362 stay stems not only from the contractual arrangement that placed the Debtor in occupancy of the premises but, also, from the attempted dominion over estate property without leave of court by blocking the gate to prohibit removal of the trucks and other equipment of the estate for use in the operation of the Debtor's business. The nexus, therefore, sounds both in contract and in tort, encompassing all elements of the state court lawsuit. The only element that might by any analysis be considered as "postpetition" pertains only to the question of monetary damages properly allowable to either the lessor or the lessee. The lease as nexus arose prior to filing. See this court's decision in *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484 (Bkrtcy. Ohio 1982).

The nature of the alleged demarcation between prepetition and postpetition claims becomes particularly specious in light of the long recognized "power of the bankruptcy court to enjoin litigation which seeks to obtain a judgment against the estate or to interfere with property of the debtor". See 2 *Collier on Bankruptcy*, Fifteenth Edition, ¶ 362.04, at page 362–28, and cases annotated in footnote 5.

 Despite the fact that there was a clear violation of the imposed automatic stay by institution of the state court lawsuit, a proper resolution of the disputed Litsey claim is not a proper function of the contempt power. Movant, who had full advance notice and knowledge of the intended state court action, had ample opportunity to raise the question of procedural propriety by instituting a proper action in the bankruptcy court by either objecting to the claim or by seeking an injunction, or both, prior to the threatened state court suit. Furthermore, the only demonstrated damages from the state court action is the expense of litigation, which could have been avoided or minimized by a timely action in the bankruptcy court by the Debtor in Possession as well as the Respondent. There was no willful violation of the bankruptcy court jurisdiction, but rather misguided reliance upon a perceived case precedent.

See decision by this court *In Re Larry Miller*, 10 B.R. 74 (Bkrtcy.Ohio 1981). Contempt orders should always be limited to the least possible exercise of a power adequate to the end to be accomplished. See decision by this court *In Matter of Michael Jones*, 27 B.R. 374, 10 B.C.D. 518, B.L.R. (CCH) ¶ 69101 (Bkrtcy.Ohio 1983).

In short, both litigants could have timely avoided the necessity of an action to enforce the automatic stay and sanctions should not be imposed for contempt of court.

Since the state court action now *sub judice* was instituted after the Chapter 11 case and because the effect of the disputed claim impacts the feasibility of the proposed plan of reorganization and thereby the Chapter 11 estate, jurisdiction must be retained in the bankruptcy court as a matter of sound judicial administration.

Action in the state court must be specifically enjoined until further order herein. The respective rights of the parties can be better determined upon resolution of the allowability of Litsey's claim and the value thereof, including a determination of any counterclaims or setoffs asserted by the Debtor in Possession.