In the Matter of BALDWIN–UNITED
CORPORATION, D.H. Baldwin
Company, et al., Debtors.

BALDWIN-UNITED CORPORATION
and D.H. Baldwin Company,
Plaintiffs,

v.

NAMED DEFENDANTS, Defendants.

Bankruptcy No. 1–83–02495.
Adv. No. 1–85–0155.

United States Bankruptcy Court,
S.D. Ohio, W.D.

April 10, 1985.

Richard Parker, Robert White, Mark Plevin, O'Melveny & Myers, Washington, D.C., for plaintiffs.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

These Chapter 11 cases are before the Court pursuant to Debtors' filing of a complaint for declaratory and injunctive relief, combined with a motion for a preliminary injunction and an application for a temporary restraining order. The 129 named defendants are creditors of the Debtors. Each of the defendants has filed a proof of claim in one or more of these cases. The complaints seek an order prohibiting the named defendants from filing third-party claims against the Debtors. Relief is sought alternatively under 11 U.S.C. § 362, 11 U.S.C. § 105, and Rule 65 of the Federal Rules of Civil Procedure as incorporated in Bankruptcy Rule 7065.

This adversary proceeding was filed in response to the following circumstances: On February 19, 1985 Paine Webber Group, Inc., which filed a proof of claim in these cases on July 24, 1984, filed a third-party complaint for contribution and indemnity against Baldwin-United Corporation and D.H. Baldwin in *Erti, et al. v. Paine Webber Jackson and Curtis, Inc., et al.*, 83

Civ. 9085, M.D.L. No. 581, a multidistrict securities class action pending in the United States District Court for the Southern District of New York. A document captioned "Advice" was subsequently filed in this Court, in which Paine Webber asserted that it was not required to seek relief from the automatic stay prior to filing its action against the Debtors, citing *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

On March 6, 1985, Paine Webber sought and obtained an *ex parte* temporary restraining order from the *Erti* Court prohibiting the Debtors from applying to this Court "for declaratory and injunctive relief which would purport to determine, affect or interfere, directly or indirectly, with the jurisdiction of the third-party complaint against Baldwin pending a hearing on and determination of the subject application for injunctive relief." After a brief hearing this temporary restraining order was converted to a preliminary injunction.

On March 14, 1985 the Debtors filed this adversary proceeding. On the same day this Court issued a 10-day temporary restraining order prohibiting the named defendants from instituting actions similar to Paine Webber's. The order did not extend to actions filed in the *Erti* litigation. That temporary restraining order was subsequently extended to March 28, the date of the hearing on Debtors' motion for a preliminary injunction.

■ Having heard the arguments of counsel and the evidence presented at the March 28 hearing, we must first determine whether the Debtors are entitled to injunctive relief under either § 105 or Rule 65. The standard for granting such relief is the same under either provision. *See, e.g., In re Trails End Lodge, Inc.*, 45 B.R. 597, 12 B.C.D. 805, 808 (Bankr.D.Vt.1984). The four factors to be considered are as follows:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982); *see also, Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.1985). The Debtors cannot prevail under this standard, since they have failed to establish that any of the defendants have threatened to take actions which would cause them irreparable harm. Indeed, the defendants that have responded to the Debtors' complaint have uniformly represented that they have no present intention of filing third-party actions for contribution or indemnity against the Debtors. In the absence of "a clear showing of the threat of irreparable harm," an injunction may not issue under § 105 or Rule 65. *Friendship Materials, Inc.*, 679 F.2d at 104.

■ The request for an order enforcing the stay imposed by 11 U.S.C. § 362 presents an entirely different question. The relief provided by the automatic stay is one of the most critical features of the Bankruptcy Code, particularly for debtors in reorganization proceedings under Chapter 11. It provides the essential breathing room for a Chapter 11 debtor to restructure its affairs with its creditors and reorganize into a viable entity. Its importance increases exponentially in cases of the magnitude of these Chapter 11s. As has been amply documented in other decisions of this Court and the United States District Court for the Southern District of Ohio, the intensity and complexity of activity among these Debtors and their creditors has been next to none. Not only have the creditors taken an active interest in dismembering the Debtors, they have on occasion taken an interest in pursuing claims against one another.

A seemingly endless stream of controversies has attended this proceeding. The most threatening conflict involved the Indiana and Arkansas insurance rehabilitators, who asserted claims to the Debtors' assets amounting to some $4 billion in the aggregate. In turn, the Debtors asserted preferences and fraudulent conveyance claims against the rehabilitators amounting to nearly $1 billion dollars. Litigating these claims would have been little more than a death march, since the Debtors' assets would almost surely have been consumed long before a final decision on liability.

After nearly a year of negotiations, the parties reached a compromise which will further the best interests of both. However, their settlement agreement requires that the Debtors have in hand a confirmed plan of reorganization by no later than January 15, 1986. Reaching this goal will require heroic efforts by both the Debtors and their creditors. Some 8200 claims totalling at least $15 billion and perhaps as much as $32 billion have been filed, and the Debtors intend to dispute most of these claims. In the meantime, disclosure statements must be written, plans of reorganization must be negotiated, and hearings on confirmation must be conducted.

While the tasks at hand are staggering in proportion, they would surely be doomed to failure if creditors were free to file third-party suits against the Debtors in the state and federal forums in which they themselves have been sued. The distractions and additional costs of defending these suits, as well as the protracted nature of those proceedings, would make it nearly impossible for the Debtors to meet their January 15 deadline with their largest and most ominous creditors. In short, if the lead of Paine Webber were followed by other creditors, the Debtors effectively would be deprived of the order and breathing room provided by the automatic stay. Such a result could not have been contemplated by the drafters of § 362, as is evident from the legislative history of that provision. *See,* House Report No. 95–595, 95th Cong., 1st Sess. 340–2 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 49–51 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

To the extent that *In re M. Frenville Co., Inc.,* 744 F.2d 332 (3rd Cir.1984) *cert. denied,* —— U.S. ——, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), holds to the contrary, we find that decision fundamentally at odds with applicable precedents from the Sixth Circuit, and respectfully decline to follow it. Our disagreement with that decision flows from the Court's failure to distinguish between "claim" as defined in 11 U.S.C. § 101(4) and a cause of action for indemnity or contribution under state law. While the Third Circuit acknowledges the all-encompassing definition of "claim" under § 101(4), it nonetheless holds that the claim for indemnity or contribution arose at the same time that a cause of action arose.

While the third-party cause of action of the accounting firm in *Frenville* may not have arisen under New York state law until *after* the petition was filed, its claim for bankruptcy purposes arose *before* the petition was filed. This is so because a "right to payment" under the definition of "claim" includes obligations which are neither matured, nor liquidated, nor fixed.[1] 11 U.S.C. § 101(4)(A).

The legislative history of § 101(4) confirms the correctness of this result, and the error of *Frenville:*

By this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent* will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

House Report No. 95–595, 95th Cong., 1st Sess. 309 (1977); Senate Report No. 95–989, 95th Cong. 2d Sess. 21 (1978) (emphasis added).

---

**1.** Ironically, Paine Webber implicitly recognized the soundness of this principle by filing a proof of claim for indemnity and contribution arising from the prepetition sale of Debtors' single premium deferred annuities.

Thus, while the third-party cause of action of the accounting firm in *Frenville* matured post-petition, the firm nonetheless had a prepetition claim in the form of an unmatured right to payment arising from debtor's alleged prepetition misconduct. Because it was attempting "to recover a claim against the debtor that arose before the commencement of the case under this title" under § 362(a)(1), the Third Circuit's holding cannot withstand scrutiny. *See, In re O'Danny Boy, Inc.*, 35 B.R. 955, 9 C.B.C. 2d 1368 (Bankr.S.D.Ohio 1983).

Even if we agreed with the *Frenville* holding, we find nothing in that case which gives a creditor license to file an action against the debtor without first seeking a determination from the appropriate court as to whether the automatic stay applies. Under these circumstances, we believe that such a determination is required, and that *NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, 755 F.2d 1253 (6th Cir.1985) requires the bankruptcy court having jurisdiction over the case to make that determination *ab initio*. In *NLT Computer Services*, an involuntary bankruptcy petition was filed against a company only minutes before a District Court in the same district was scheduled to hear a summary judgment motion in a federal insolvency proceeding previously filed against the same company under 31 U.S.C. § 3713. The District Court withdrew the case from the bankruptcy court, lifted the automatic stay, and proceeded with the hearing on the summary judgment motion.

In reversing the District Court, the United States Court of Appeals made the following poignant observations:

In our view, the district court's action short-circuits the orderly procedure for the administration of bankruptcy stays by failing to recognize the legal effect of both the filing of the involuntary bankruptcy proceedings and the issuance of the automatic stay.

We assume, as did the parties and the trial judge, that the involuntary bankruptcy petition was in fact filed. Yet, in our view, the fact that bankruptcy pro-

ceedings are pending in a specific United States district court does not confer upon any judge sitting in that court the right to lift an automatic stay as to any other proceedings before him. The Bankruptcy Act and rules carefully set forth the procedures for the administration of bankruptcy proceedings. The stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted. *See Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir.1983), *cert. denied* [—— U.S. ——] 104 S.Ct. 3537 [82 L.Ed.2d 842] (1984).

... In our view, the trial judge in these proceedings was in a position no different from that of any judge presiding in any other pending federal, state, or local court proceedings which could affect the assets of the bankrupt. *It certainly cannot seriously be claimed that were such a suit pending in another district court or in a state court, the judge of that court could proceed to decide that suit on the merits without a motion to lift the stay under 11 U.S.C. § 362(d) having first been filed in the bankruptcy proceeding itself.*

*NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, at .1258. (emphasis added).

As noted above, the mere filing of a third-party suit for indemnity and contribution affects the assets of these Debtors, since such suits must inevitably add to the administrative costs of the estates with a concomitant decrease in proceeds available for distribution to creditors. If, as Paine Webber contends, creditors are permitted to file such suits and have the forum in which they are filed determine whether the creditor's assessment of the automatic stay's applicability is correct, then the protections of the automatic stay, the rules for administering bankruptcy estates, and the bankruptcy court's jurisdiction over the Debtors' assets would be rendered meaningless. Such a result certainly is not

countenanced by the *Frenville* decision, since there the issue decided by the Third Circuit was initially ruled upon by the bankruptcy court having jurisdiction over the debtor's estate.

For the reasons stated above, the Court hereby GRANTS the Debtors' request for an order enforcing the automatic stay, and issues the following ORDER:

1. The defendants are hereby stayed from commencing or continuing any third-party suit or proceeding against the Debtors for contribution or indemnity without first seeking a determination from this Court as to the applicability of the automatic stay imposed by 11 U.S.C. § 362. Any defendant who violates this Order may be held in contempt by this Court, have attorney's fees, actual damages, and/or punitive damages assessed against it, or be subject to other appropriate sanctions, *See, In re Thacker*, 24 B.R. 835 (Bankr.S.D.Ohio 1982); 11 U.S.C. § 362(h).

2. This Order shall not apply to actions by any party in *In re Baldwin-United Corporation Litigation*, MDL 581, pending in the United States District Court for the Southern District of New York.

3. This Order shall take effect immediately upon entry by the Clerk of Courts. Debtors shall serve this Order on all defendants by ordinary U.S. Mail within 24 hours of the time of entry.

The foregoing shall constitute this Court's Findings of Fact, Opinion and Conclusions of Law. Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the trial on the merits of plaintiff's complaint is hereby consolidated with the hearing on the motion for a preliminary injunction.

IT IS SO ORDERED.