**In the Matter of Donald BROCK, Debtor.**

**Donald BROCK, Plaintiff,**

**v.**

**Glenda F. BARLOW fka Glenda F. Brock, Defendant.**

**Glenda F. BARLOW fka Glenda F. Brock, Plaintiff,**

**v.**

**Donald BROCK, Defendant.**

**Bankruptcy No. 3–81–00925.
Adv. Nos. 3–81–0326, 3–81–0381.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 14, 1986.

Christopher M. Hawk, Dayton, Ohio, for debtor/plaintiff.

Dennis E. Stegner, Springfield, Ohio, for defendant.

## DECISION SUSTAINING COMPLAINT FOR VIOLATION OF 11 U.S.C. § 362

## DECISION DENYING COMPLAINT TO DETERMINE EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(5)

### INTRODUCTION OF ISSUES PRESENTED

THOMAS F. WALDRON, Bankruptcy Judge.

In the voluntary Chapter 7 bankruptcy case of Donald Brock, Case No. 3–81–00925, there were two adversary proceedings filed: Donald Brock (hereinafter Brock) vs. Glenda F. Barlow (hereinafter Barlow), the former spouse of Brock, filed under adversary proceeding number 3–81–0326; and, Glenda F. Barlow vs. Donald Brock, filed under adversary proceeding number 3–81–0381. Although the two adversary proceedings were not consolidated, by agreement of counsel following a pretrial conference, it was agreed that both cases would be tried simultaneously and all evidence received would be considered in both cases and accordingly, although a separate judgment is entered in each adversary proceeding, the same opinion is provided in both adversary proceedings.

On September 29, 1980, the parties herein were divorced under the terms of a divorce decree which provided in part that Brock pay a debt to Household Finance Corporation (hereinafter H.F.C.) and hold Barlow harmless.

On March 18, 1981, a motion was filed by Barlow to find Brock in contempt of a domestic relations court order contained in a divorce decree. This motion was set for hearing in state court on April 20, 1981.

On March 24, 1981, the voluntary Chapter 7 proceeding of Brock was filed. On

May 19, 1981, a complaint was filed in the bankruptcy court on behalf of Brock against Barlow alleging violation of the provisions of 11 U.S.C. § 362(a) (automatic stay). On June 15, 1981, a complaint to determine dischargeability of the debt upon which Brock was ordered to hold Barlow harmless was filed in the bankruptcy court by Barlow against Brock.

These two adversary proceedings represent matters that require a decision providing not only a recognition of the issues of comity involved in a federal/state judicial system, but also a framework for the resolution of matters repeatedly presented in connection with bankruptcy court dischargeability proceedings involving state domestic relations court judgments pursuant to 11 U.S.C. § 523(a)(5).

## I. PROCEDURAL POSTURE

This is a case arising under 28 U.S.C. § 1334(a) and having been referred to this court, Adversary No. 3–81–0326 (*Brock v. Barlow*) is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in which Brock seeks a judgment that Barlow violated the provisions of the automatic stay and an award of damages against her, and Adversary No. 3–81–0381 (*Barlow v. Brock*) is determined to be a core proceeding pursuant to 28 U.S.C. § 157(a)(2)(I), in which Barlow seeks a determination that the debt due to H.F.C. upon which Brock was to hold her harmless pursuant to a domestic relations court divorce decree is an exception to the debtor's discharge because the debt is alimony, maintenance or support as determined under 11 U.S.C. § 523(a)(5).

Prior to addressing the substantive issues presented in these adversary proceedings, it is important to recognize the differing jurisdictional foundations presented in each proceeding.

## II. JURISDICTIONAL FOUNDATIONS

With regard to Barlow's complaint to determine the H.F.C. debt as an exception to a discharge, it must be kept in mind that the statutory scheme set forth in 11 U.S.C. § 523 (exceptions to discharge) contemplates that the determination of the dischargeability of a debt in certain cases is committed to the exclusive jurisdiction of the bankruptcy court (11 U.S.C. § 523(c)),[1] but in other cases is subject to the concurrent jurisdiction of a federal bankruptcy court and a state court. *See generally* 3 *Collier On Bankruptcy* ¶ 523.15[6] (15th ed. 1985). The particular debt in question in this proceeding, the payment of a second mortgage arising out of a divorce decree is a common example of a debt in which a bankruptcy court and a state domestic relations court have concurrent jurisdiction to determine dischargeability, provided a federal standard concerning the determination of alimony is used in reaching the decision concerning dischargeability of the debt. *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103 (6th Cir.1983).

While a state domestic relations court in the exercise of concurrent jurisdiction may make a determination concerning the dischargeability of a debt under 11 U.S.C. § 523(a)(5) by the application of federal standards of alimony, maintenance or support, such concurrent jurisdiction does not exist with regard to the provisions of 11 U.S.C. § 362.

The automatic stay issued by the bankruptcy court which becomes effective upon the filing of a bankruptcy petition is integral to the entire statutory scheme of Title 11 and represents a considered congressional determination that a debtor, creditors and other interested parties in a bankruptcy proceeding must be guaranteed an immediate period of time in which to propose a reorganization of the debtor's finan-

---

**1.** (c) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of his section.

11 U.S.C. § 523(c) (Supp. V 1981).

cial affairs or an immediate opportunity for a court appointed trustee to examine the assets and liabilities of a debtor free from any pressure brought by an individual creditor or interested party. It is the bankruptcy court *alone* that has the exclusive jurisdiction to determine questions involving the automatic stay. This position was recently approved by the Sixth Circuit Court of Appeals in *NLT Computer Services, Corporation v. Capital Computer Systems, Inc.,* 755 F.2d 1253 (6th Cir.1985) in which an involuntary bankruptcy petition was filed only minutes before a district court, sitting in the same district as the bankruptcy court, was to commence a hearing on a summary judgment motion involving a federal insolvency proceeding that had previously been filed against the debtor pursuant to 31 U.S.C. § 3713. The district court, at the time of its hearing, withdrew the case from the bankruptcy court, removed the automatic stay and heard the summary judgment motion. The court of appeals in reversing the district court stated:

> In our view, the district court's action short-circuits the orderly procedure for the administration of bankruptcy stays by failing to recognize the legal effect of both the filing of the involuntary bankruptcy proceedings and the issuance of the automatic stay.

> We assume, as did the parties and the trial judge, that the involuntary bankruptcy petition was in fact filed. Yet, in our view, the fact that bankruptcy proceedings are pending in a specific United States district court does not confer upon any judge sitting in that court the right to lift an automatic stay as to any other proceedings before him. The Bankruptcy Act and rules carefully set forth the procedures for the administration of bankruptcy proceedings. The stay provisions of Section 362 are automatic and self-operating and *those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted. See Clay v. Johns-Manville Sales Corp.,* 722 F.2d 1289 (6th

Cir.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984).

. . . .

> In our view, the trial judge in these proceedings was in a position no different from that of any judge presiding in any other pending federal, state, or local court proceedings which could affect the assets of a bankrupt. It certainly cannot seriously be claimed that were such a suit pending in another district court or in a state court, the judge of that court could proceed to decide that suit on the merits without a motion to lift the stay under 11 U.S.C. § 362(d) having first been filed in the bankruptcy proceeding itself (emphasis added).

*Id.* at 1258. Accordingly, the separate and distinct jurisdictional foundations involved in these two adversary proceedings demand a different analysis of the common issues raised in them.

### III. FINDINGS OF FACT

The parties in this case submitted written stipulations of facts which were supplemented on three subsequent occasions. The various stipulations provide *inter alia:* The parties were married on October 26, 1974, and no children were born to the marriage. The parties were divorced on September 29, 1980, at which time the wife who had been employed throughout the marriage was earning approximately $220.00 per week and the husband who had been employed throughout the marriage was earning approximately $582.00 per week. The divorce decree provided that Barlow receive all of the assets of the parties, except for Brock's personal clothing and a 1978 truck which was subject to a lien in the amount of $6,500.00. The wife received pursuant to the divorce decree ten acres containing a house and barn, which had been appraised prior to the divorce at $125,000.00 and was subject to liens at the time of the divorce of approximately $78,-000.00. The wife also received Arabian horses worth approximately $4,000.00 and a tractor worth approximately $6,000.00 and other assets including all of the tools, furniture and furnishings in the home and

barn. The first mortgage payment was $353.25 per month. The second mortgage payment, which is the H.F.C. debt in dispute in these proceedings, was $500.00 per month. Both parties retained their own interests in their retirement plans with General Motors. At the time of the divorce the wife was thirty-one (31) years old and the husband was thirty-seven (37) and each party enjoyed good health. Although there appeared to be equity in the real estate and it was listed for sale at a price which would have produced equity if it were sold at that price, the real estate, including the five acre tract adjacent to the house, the John Deere tractor, and the house itself were sold at a sheriff's sale on December 3, 1982, for the sum of $55,000.00, and a deficiency judgment presently exists against Barlow in the amount of $25,515.58. Brock made payments on the H.F.C. debt for some period of time following the divorce, but then ceased making payments. Brock was incarcerated pursuant to an order of the state court domestic relations judge on June 29, 1981, and was released from his incarceration on July 1, 1981.

On September 29, 1980, Barlow appeared at a divorce hearing in the Court of Common Pleas of Clark County Ohio, Case No. 80 CIV 1200, at which time Brock was not present. On October 16, 1980, their divorce was entered by the court; it provided in part that "the Defendant [Brock] ... shall pay Household Finance and shall hold Plaintiff [Barlow] harmless from the same."

On March 18, 1981, Barlow, filed a motion for contempt stating that Brock had been ordered to pay Household Finance Corporation and hold her harmless and had failed to do so and requested that, "for defendant's failure to hold plaintiff harmless in the above described matter, plaintiff demands that the Court find the defendant in contempt." A hearing was set on that matter for April 20, 1981 at 9:00 A.M.

On March 24, 1981, Brock filed a voluntary proceeding in bankruptcy under Chapter 7, Title 11 of the United States Code—

Case No. 3–81–00925. On April 4, 1981, a letter was sent by Brock's attorney, Christopher Hawk, to Barlow's attorney, Stephen E. Schutte, advising him of the bankruptcy filing and asking whether or not he planned to dismiss the motion for contempt against Brock. On April 13th, Schutte sent Hawk a letter asking for some legal authority for the position that the contempt motion should be dismissed. Following subsequent correspondence and a phone conversation, Schutte sent a letter to Hawk advising that the state contempt motion had been rescheduled for May 11, 1981, and stating that the domestic relations judge wanted counsel to be present, "[e]ven though your point of law is correct." (Exhibit 6). Sometime thereafter, Barlow discharged Schutte and obtained new counsel, Reed P. Jewett, who sent a letter to Hawk advising him that he now represented Barlow and "we fully intend to proceed with the Contempt hearing against your client. We are also filing our Complaint in the Bankruptcy Court requesting that any claim that Glenda F. Barlow has against your client not be discharged on the basis of the Court order in Clark County, Ohio." (Exhibit 7).

On May 11, 1981, the state court continued the motion for contempt without taking testimony. On May 19, 1981, a complaint was filed in this court by Brock against Barlow alleging violations of 11 U.S.C. § 362(a). On May 22, 1981, Jewett sent Hawk a letter advising that the contempt charge had been continued to June 15, 1981. On June 15, 1981, a complaint to determine the dischargeability of the debt was filed by Barlow in this court, and the hearing on contempt was continued until June 29, 1981.

On June 29, 1981, the contempt hearing was held—Brock, Barlow and their attorneys all appeared. At the conclusion of the hearing, the defendant was ordered to be incarcerated in the Clark County jail for "a period of fifteen days or until he purges himself of Civil Contempt by complying with the Court's Order of October 16, relating to holding the Defendant harmless as

indicated." (Exhibit 12). A subsequent motion for stay of execution and approval of a supersedeas bond was denied and a notice of appeal was filed on June 29, 1981, to the Second District Court of Appeals. (Exhibits 14 and 15). Following his incarceration, Brock phoned his family who arranged to pay $2,500.00 to H.F.C., and thereafter on July 1st, Brock was released from the Clark County jail.

In addition to the stipulations of the parties, from the evidence presented, the court finds that at the present time Barlow receives approximately $490.00 per week from her full-time employment, has not remarried and has no dependents. Following the divorce, she received a share of the proceeds from a partnership in an airplane, $3,000.00 as her share of a joint federal income tax refund, and $4,000.00 from the sale of a tractor. She used the $4,000.00 amount as a down payment on a truck she now drives.

The court also finds from the testimony of Stephen Hurley, an expert witness called by the plaintiff, that the services rendered by the attorney for Brock in the state court proceedings would involve thirty to thirty-five hours in a three to four day period, and that a reasonable fee for such services would be between $75.00 to $150.00 per hour; and that the services rendered by the attorney for Brock in the bankruptcy court proceedings would involve thirty to forty hours, and a reasonable fee for such services would be between $100.00 and $200.00 per hour. The court further finds that the expert witnesses' fee would be $75.00 per hour for a period of one and one-half hours.

In addition, the court finds from the evidence presented that Brock had never been in jail before, that he experienced fear for his life and fear that no one would help him if he was in danger, that as a result of the incarceration, he lost five days of his vacation time, that he was subjected to harassment by co-workers, referred to as a "jail bird," and was subjected to detailed inquiry by his supervisors whom he found difficult to persuade that the only reason for his incarceration was an unpaid obligation arising from a divorce proceeding.

The court also finds from the testimony of Barlow that she was both aware that the bankruptcy proceeding had been filed and that she was listed as a creditor. She admitted she had a conversation with Brock's attorney, Hawk, in which he told her that it was his legal opinion that she could not proceed in the state court with a contempt action in view of the bankruptcy filing, and at least one of her own attorneys shared that view.

## IV. QUESTIONS PRESENTED FOR DECISION

(a) Did Barlow's actions in seeking a finding of contempt in the state domestic relations court after Brock had filed his bankruptcy petition constitute a willful violation of the provisions of 11 U.S.C. § 362; and,

(b) Is the debt to H.F.C., which the state divorce decree requires that Brock hold Barlow harmless on, an exception to discharge under the provisions of 11 U.S.C. § 523(a)(5)?

While the factual and legal issues involved in a resolution of these questions are intertwined, they are not dependent upon each other. Whether or not the debt is determined to be an exception to discharge does not resolve the issue of an alleged violation of the automatic stay order. Likewise, a finding that the provisions of the automatic stay order were violated does not resolve the issue of the dischargeability of the debt.

## V. OPINION

### A. The Automatic Stay—11 U.S.C. § 362

Central to the resolution of the various issues presented in these proceedings is an understanding of the statutory scheme of 11 U.S.C. § 362(a) (automatic stay).[2] This

2. (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

code section provides that at the moment the debtor files a bankruptcy petition, a congressionally mandated order is automatically entered by the court applicable to all entities which prevents the commencement or continuation, including the issuance or employment of process, of any judicial proceeding against the debtor that could have been commenced against the debtor, including the enforcement of any judgment against the debtor or against property of the estate; and, further prevents any act to obtain possession of property of the estate or to exercise control over property of the estate; and, prevents any act to collect or recover a claim against the debtor that arose before the filing of the bankruptcy petition.

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C. § 362(a) (Supp. V 1981).

3. (b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

. . . .

(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;

11 U.S.C. § 362(b)(2) (Supp. V 1981).

Among the exceptions to the stay order in 11 U.S.C. § 362(b) is the provision that the filing of the debtor's petition does not operate as a stay or prevent "the collection of alimony, maintenance, or support from property that is not property of the estate." [3]

Further and quite importantly, 11 U.S.C. §§ 362(d) and (e) provide that at the request of a party in interest and after notice and hearing, the court shall, if certain conditions are met, grant relief from the stay by terminating, annulling, modifying or conditioning such stay within thirty (30) days after a request for relief has been filed.[4] Additionally, 11 U.S.C. § 362(f) provides that upon request of a party in interest, the court, even without a hearing being

4. (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property; if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—

(1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and

(2) such final hearing shall be commenced within thirty days after such preliminary hearing.

11 U.S.C. § 362(d), (e) (Supp. V 1981).

held, can grant relief from the stay under certain conditions.[5]

■ While these provisions provide an opportunity for relief from the stay, and do so in an expedited and in some cases immediate fashion, they do not authorize a party to ignore the provisions of the automatic stay and to proceed, without a determination by the bankruptcy court, against the debtor, any property of the estate, or any other property of the debtor until such property has been determined not to be property of the estate. These determinations belong exclusively to the bankruptcy court and in the absence of an order of relief entered by the bankruptcy court a creditor and creditor's counsel proceed at their peril. As the bankruptcy court *In re Pody*, 42 B.R. 570 (Bankr.N.D.Ala.1984) stated in a recent opinion,

> As noted in *Matter of Batla*, 12 B.R. 397, 400 (Bktcy.N.D.Ga.1981), if there is uncertainty about an order of the Court, or, as in this case, the applicability of the automatic stay and the dischargeability of a particular debt, a creditor may petition the Court for clarification, and if the creditor does not, the creditor takes the calculated risk of being held in contempt. 12 B.R. at 400 [citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949) ]. In the case at bar, the creditor, the debtor's former spouse, made her own determination as to the applicability of the automatic stay and the dischargeability of a particular debt, leaving the burden of commencing this proceeding on the debtor.

*Id.* at 573–74.

Similarly, it was recently observed in *In re Baldwin-United Corporation*, 48 B.R. 901, 13 C.B.C.2d 180 (Bankr.S.D.Ohio 1985):

> If ... creditors are permitted to file such suits and have the forum in which they are filed determine whether the creditor's assessment of the automatic stay's applicability is correct, then the protections of the automatic stay, the rules for administering bankruptcy estates, and the bankruptcy court's jurisdiction over the Debtors' assets would be rendered meaningless.

*Id.* 48 B.R. 901, 13 C.B.C.2d at p. 186.

While the issues of which party filed which action and in which sequence—the bankruptcy petition, the contempt proceeding, the request for relief, the complaint to determine an exception to discharge, etc.— are essential elements in an analysis of which forum should exercise jurisdiction to determine the dischargeability of a debt and are factors to be considered in whether or not to grant relief from the automatic stay, the filings and the sequence of the filings are not factors in determining whether or not a creditor must seek relief from the provisions of the automatic stay prior to commencing or continuing actions in state courts.

The protection afforded by the automatic stay extends to any actions by creditors or their counsel. As the bankruptcy court stated in *In re Clark*, 49 B.R. 704 (Bankr. D.Guam):

> However, for Paik and Sanchez to proceed on May 3 to seek the injunctive relief, after being notified of the filing of the Petition in the Bankruptcy Court, is a violation of the automatic stay, especially where the real purpose of the action in the Superior Court was to force Debtor to pay Mr. and Mrs. Wilson their pre-petition debts.

> Instead of researching the matter on the effect of the automatic stay, Paik relied on his employee, Sanchez, a young recent law school graduate, who had informed him that the stay did not apply and Paik made no effort to suspend the action for injunctive relief pending the bankruptcy proceeding.

> ....

---

**5.** (f) The court, without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

11 U.S.C. § 362(f) (Supp. V 1981).

In the instant case, where both Paik and Sanchez were inexperienced in the field of bankruptcy, in addition to the research by Sanchez, one or the other should have contacted an attorney with expertise in the field of bankruptcy. In failing to do so, they took a calculated risk and violated the automatic stay. *Id.* at 707. *See also Mack v. Pennsylvania Department of Public Welfare (In re Mack)*, 46 B.R. 652 (Bankr.E.D.Pa.1985); *Gray v. Engesser (In re Gray)*, 41 B.R. 759 (Bankr.S.D.Ohio 1984).

### B. Principles Of Comity

While the legislative history and consistent federal interpretation of 11 U.S.C. § 362 clearly require a creditor to seek relief from the provisions of the automatic stay or proceed at peril, a discussion of these provisions as they relate to state court contempt proceedings arising out of domestic relations matters would not be complete without a discussion of the principles of comity involved in federal/state relationships. In that context, a decision from the Ohio Supreme Court *Barnett v. Barnett*, 9 Ohio St.3rd 47, 458 N.E.2d 834 (1984), is particularly instructive. The syllabus by the court, which under Ohio law represents the holding by the court, 23 O.Jur.3d *Courts and Judges* §§ 534, 535 (1980), states, "The automatic stay provision as provided for in Section 362, Title 11, U.S.Code, is not violative of the Tenth Amendment to the Constitution of the United States insofar as it stays a state court contempt action to enforce a divorce decree dividing marital property."

In that particular case, the parties were divorced on November 14, 1980, and the husband was required to pay the debts of the parties incurred during the marriage. On February 27, 1981, the husband filed bankruptcy. Although the wife was not originally listed as a creditor in the bankruptcy schedules, an amendment was filed on May 13, 1981, listing her as a creditor. In the period after the original filing, but prior to the amendment listing her as a creditor and before any hearing was held on the contempt motion, the wife on May 8, 1981, filed a motion seeking a contempt order against the husband for his failure to pay a debt, specifically a debt owing to The First National Bank of Warren County, Ohio. The husband's counsel responded in the contempt action that an automatic stay existed since the filing of the petition in bankruptcy and accordingly the state court action could not proceed.

A referee in the Division of Domestic Relations, Court of Common Pleas of Warren County, heard the matter and found that the automatic stay of the bankruptcy court existed and was effective as to the provisions in the divorce decree that related to the payment of this debt. The referee recommended to the court that the motion for contempt should be denied until the bankruptcy court ruled on whether the debts were dischargeable and this report was adopted by the domestic relations court of Warren County. The wife did not seek relief from the stay nor contest the discharge of any of the debts listed in the husband's bankruptcy, including the particular debt in dispute. The decision of the trial court was appealed to the Court of Appeals for Warren County and that court *sua sponte* raised the issue of the constitutionality of the automatic stay provision, and found it violative of the tenth amendment to the Constitution of the United States insofar as it stays the state court's contempt proceedings to enforce the divorce decree.

The Ohio Supreme Court reversed the decision of the Court of Appeals for Warren County and in the course of the opinion stated:

> [W]e find that the automatic stay provision of the Federal Bankruptcy Act, Section 362, Title 11, U.S.Code, is not directed at the states but, rather, at the individual debtors and creditors involved in the bankruptcy proceedings.
>
> . . . .
>
> Second, we hold that Section 362, Title 11, U.S.Code, makes no attempt to address matters that are "indisputably attributes of state sovereignty." Matters

of bankruptcy are not indisputably matters of state sovereignty but, rather, matters of exclusive jurisdiction given by Congressional Act to bankruptcy courts pursuant to the Constitution of the United States. In order for a bankruptcy court to properly carry out its functions, it must have the ability to determine claims that are dischargeable. The automatic stay provision was embodied within the Federal Bankruptcy Act in order to allow the court a period of time to make the necessary determinations. As to the federal aspect of bankruptcy court proceedings and determinations, we find the following in Case Comment, 50 American Bankruptcy L.J. (1976) 175, 176–177:

"In ruling on dischargeability of a debt the bankruptcy court is not bound by state law. The bankruptcy court does not sit as another state court as in diversity cases. Rather, it sits as a federal court applying federal law. The doctrine of *Erie R.R. v. Thompkins* [sic] [ (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] is not applicable."

Third, an analysis of the underlying purposes of the Federal Bankruptcy Act and, particularly, the automatic stay provision of Section 362, brings us to the conclusion that such section does not "directly impair" the state's ability "to structure integral operations in areas of traditional governmental functions." (footnotes omitted).

*Id.* at 838–39.

█ Since Barlow was properly listed as a creditor at the time Brock's petition was filed, received notice of the bankruptcy, and was directly advised by one or more attorneys that her actions in seeking a contempt order were in violation of the bankruptcy court's automatic stay provisions, the court must conclude that her violation of the provisions of 11 U.S.C. § 362(a) was willful.

### C. Exception To Discharge—11 U.S.C. § 523(a)(5)

In order to complete the analysis of the issues presented in this case, it is necessary to discuss determinations of the dischargeability of debts pursuant to federal dischargeability standards when concurrent jurisdiction exists between federal bankruptcy courts and state domestic relations courts.

When Congress enacted the Bankruptcy Code, it recognized the connection between "family strain and divorce" and "serious financial crisis." H.R.Rep. No. 595, 95th Cong., 1st Sess. 116, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6077. Other governmental reports recognized that family separation costs are among the leading factors influencing a decision to file bankruptcy. Comptroller General's Report to the Chairman, Committee on the Judiciary, *House of Representatives, Bankruptcy Reform Act of 1978—A Before and After Look,* 2–3 (July 20, 1983). The two conflicting policy concerns—providing the debtor with a fresh start and requiring an ex-spouse to comply with the payment of court-ordered alimony, maintenance and support have been expressed:

In deciding whether a particular debt of the bankrupt qualifies as alimony, maintenance or support so as to be nondischargeable in bankruptcy the bankruptcy court is confronted with two conflicting policy considerations, that of requiring the bankrupt to fulfill obligations to his ex-wife arising out of the broken marriage contract and that of giving the bankrupt a fresh start unencumbered by the burdens of preexisting debt arising from other contracts.

Lee, *Case Comment,* 50 Am.Bankr.L.J. 175, 177 (1976). *See also Stelly v. Breaux (In re Breaux),* 8 B.R. 218 (Bankr.W.D.La. 1981). "It is also certain that the public policy considerations behind the Bankruptcy Code in giving the debtor a fresh start does not mean that this should be done at the expense of his familial duties." *Id.* at 220.

The leading case in this circuit on the issue of dischargeability of debts involving alimony, maintenance and support is *In re*

*Calhoun,* 715 F.2d 1103 (1983), in which the court stated:

Section 523(a)(5) represents Congress' resolution of the conflict between the discharge of obligations allowed by the bankruptcy laws and the need to ensure necessary financial support for the divorced spouse and children of the debtor. Accordingly, § 523 excepts from discharge payments:

(5) to a spouse, former spouse, or child of the debtor, or alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

. . . .

The remaining portion of the report, however, refutes any direct payment requirement in the case of an agreement to hold a spouse harmless on joint debts.

This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or property settlement. *See Hearings,* pt. 3, at 1287–1290. [H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977) *reprinted in* [1978] U.S.Code Cong. & Ad.News, 5787, 6320; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 79 *reprinted in* [1978] U.S.Code Cong. & Ad.News 5865.]

*Id.* at 1106.

The Sixth Circuit's decision sets forth the various determinations that are to be made by the court in deciding whether a particular debt is discharged. The court stated that,

It is clear from the statute and legislative history that Congress could not have intended that all assumptions of joint debts would be nondischargeable. Such assumptions of debt are discharged "to the extent that payment ... is not actually in the nature of alimony, maintenance or support...."

. . . .

This, and Congress' mandate that federal bankruptcy law considerations must be determinative in dischargeability issues, convinces us that a more searching inquiry is required than merely applying traditional factors borrowed from state law.

We believe that the initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the assumption of joint debts. If they did not, the inquiry ends there.

. . . .

This finding of intent does not, however, control the ultimate issue of whether the assumption of joint debts was actually in the nature of support for purposes of federal bankruptcy. If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to insure that the daily needs of the former spouse and any children of the marriage are satisfied.... The bankruptcy court should also look to the practical effect of the discharge of each loan upon the dependent spouse's ability to sustain daily needs.... If without the loan assumption the spouse could not maintain the daily necessities, such as food, housing and transportation, the effect of loan assumption may be found "in the nature of" support for purposes of the Bankruptcy Act.... If the loan assumption is not found necessary to provide such support, the inquiry ends and the debt-

or's obligation to hold the former spouse harmless must be discharged.

Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support.... If, at the time the debts were assumed, the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support.

... If the bankruptcy court finds that the loan assumption too excessive to be fairly considered "in the nature of" support it must then set a reasonable limit on the nondischargeability of that obligation for purposes of bankruptcy (emphasis in original) (footnotes and citations omitted).

*Id.* at 1108–10.

With regard to the issue of concurrent jurisdiction, the court in *In re Maynard*, 30 B.R. 279 (S.D.Ohio, W.D.1983) stated:

While certain dischargeability matters, those designated in § 523(c) are for practical purposes for the exclusive disposition by the Federal Court, claims involving § 523(a)(5), that provision with which we are here dealing, is not one of those. See 3 *Collier on Bankruptcy* (15th ed.) ¶ 523.15[6], p. 523–115–116.

There is no real dispute between the parties that the jurisdiction of this Court and that of the state court are concurrent with respect to the dischargeability matter here at issue.

*Id.* at 281.

Since the law governing the determination of the dischargeability of this particular debt is not in dispute, the resolution of the issue turns on the application of the law to the particular facts presented.

In this connection, the court adopts the analysis *In re Helm*, 48 B.R. 215 (Bankr.W.

D.Ky.1985).[6] "For ease of discussion we will refer to the four components of the *Calhoun* analysis, in order, as *intent, effect, amount* and *apportionment*" (emphasis in original). *Id.* at 221. It must be recalled that *Calhoun* directs that the court stop further analysis and determine the debt to be dischargeable when the court, in its progression through the four components, determines any component adverse to the party seeking the exception to discharge.

With regard to the issue of intent, it is important to note that the state court judgment, recited in the divorce decree entered in this proceeding, was done without Brock's presence at the hearing or his signature to the terms of the decree. While Brock asserted at the time of the hearing in this court that he received no notice of the final divorce hearing, that position was not pressed by counsel at the time of the hearing in this court, nor was that matter raised in subsequent appearances before the state court or in the appeal filed with the state court of appeals. The court can give little weight to the parties' contradictory testimony presented at the hearing in this court concerning their alleged intentions at the time of their divorce in connection with the future economic obligations arising from property transfers related to their divorce. This court concludes that future economic obligations were not a demonstrated focus of either party's attention at the time of their divorce.

■ Assuming arguendo that it was the intent of the parties, or at least of the state court to create a support obligation, which could arguably be implied from the court's findings at the contempt hearing, (Exhibit 12) we turn to the second component of the *Calhoun* analysis—effect, that is, whether the support provision has the actual effect of providing necessary support.

With regard to this question, we find that at the time of the divorce, Barlow was thirty-one (31) years of age, in good health, fully employed, without dependents, and

**6.** *In re Helm* contains a useful **APPENDIX** of cases citing *Calhoun*.

resided on ten (10) acres of real estate that contained a house and barn. The real estate appeared to have equity. In addition she owned several horses, an automobile, and miscellaneous other assets including an interest in an airplane, several thousand dollars of equity in a tractor, all the miscellaneous furniture and furnishings in the parties' marital residence, the funds on deposit in her own bank account and a retirement plan.

The debtor, although fully employed and earning more than two times the amount Barlow earned, had deeded to her his entire interest in the real estate, which had been partially financed with a $5,000.00 down payment from his family, and had surrendered his interest in all other assets accumulated by the parties during their relatively brief marriage which produced no children. He retained only his interest in an automobile which had little, if any, equity and his clothing. He also was paying support for a child from a former marriage and would presumably be required to obtain future shelter, furnishings and furniture for his own living needs. In such circumstances, it is impossible to conclude that the payment of this obligation had the effect of providing necessary support to Barlow. *See In re Calhoun, In re Helm, In re Pody, Johnson v. Seta (In re Seta),* 45 B.R. 8 (S.D.Ohio W.D.1984).

As stated earlier, although the issues involving the automatic stay and the dischargeability of the debt are not dependent upon each other, they are intertwined. As is now obvious, the debt in question has been determined not to be an exception to discharge; therefore, Brock is relieved of any obligation to pay this debt on behalf of Barlow and the debt could not be the subject of any future state court domestic relations proceedings. Consequently, Barlow will be barred by the injunctive provisions of the discharge order under 11 U.S.C. § 524(a) from attempting to collect any portion of this debt from any present or future assets of Brock. Accordingly, Barlow could not have proceeded even against property that was not property of the estate and belonged only to Brock since the determination of the debt in this case establishes that the obligation to H.F.C. was a dischargeable debt and not alimony, maintenance or support pursuant to 11 U.S.C. § 523(a)(5).

Having determined that the actions of Barlow were in willful violation of the provisions of the automatic stay and that the debt is not an exception to the discharge and accordingly will be discharged in this bankruptcy proceeding, we turn to the measure of damages.

### D. Damages

While questions may exist concerning the authority of a bankruptcy court to impose certain contempt sanctions, there is ample authority specifically recognizing its authority to enter awards of damages for violations of 11 U.S.C. § 362. 2 *Collier On Bankruptcy* ¶ 362.11 (15th ed. 1985).[7]

The evidence presented in the within proceedings is uncontroverted that the debtor paid the sum of $2,500.00 to H.F.C. on behalf of Barlow in order to secure his release from imprisonment following the contempt proceeding instituted and continued by Barlow. In addition, it was necessary for the defendant to retain counsel both in connection with the defense of the contempt proceedings in the state court and the proceedings in the bankruptcy court for violation of the automatic stay. It is likewise undisputed that the defendant lost five (5) days from work which although

---

7. Existing case law providing for the award of damages was strengthened by the Bankruptcy Amendments and Federal Judgeship Act of 1984 which provides in 11 U.S.C. § 362(h) that: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *See also Better Homes of Virginia, Inc. v. Budget Service Company (In re Better Homes of Virginia, Inc.),* 52 B.R. 426, 13 C.B.C.2d 377 (Bankr.E.D.Va.1985); *In re Clark,* 49 B.R. 704; *In re Baldwin-United Corporation,* 48 B.R. 901 (S.D.Ohio W.D.1985); *AM International, Inc. v. Tennessee Valley Authority (In re AM International, Inc.),* 46 B.R. 566 (M.D.Tenn. 1985); *In re Pody,* 42 B.R. 570.

he took them as vacation days had a minimum value of $580.00—his weekly earnings at that time. While Brock's expert witness was subjected to cross-examination by Barlow, no evidence was introduced to contradict the testimony of the expert witness, corroborated by Brock, that debtor's counsel spent a minimum of thirty (30) hours at a minimum of $75.00 per hour for a minimum of $2,250.00 in connection with the state court proceeding and a minimum of thirty (30) hours at a minimum of $100.00 per hour for a minimum of $3,000.00 in the bankruptcy proceeding. It is likewise uncontradicted that the cost of the expert testimony was $112.50.

It is stipulated that Brock was incarcerated for three and one-half days (Doc. 17). Brock's attorney urged $5,000.00 per day as the amount necessary to adequately compensate Brock for the trauma of incarceration and the subsequent humiliation, embarrassment and degradation suffered by the debtor at his employment. While analogies were made by Barlow's counsel to damage awards in personal injury cases, in which the damage award would be minimum since there was no physical trauma involved, the court considers more meaningful the colloquy which took place concerning an analogy to false imprisonment cases during which it was conceded that the sum of $500.00 per day could be considered an appropriate figure.

While court deems it unlikely that a person enjoying the same circumstances as Brock would willingly enter a county jail and remain incarcerated for three and one-half days and thereafter have his time spent in the jail questioned by his employers and coworkers if his only compensation for that period was at the rate of $25.00 per hour; nevertheless, in the facts and circumstances of this case, the court determines that amount to be an appropriate measure of damages and awards the debtor the amount of $2,100.00 for the period of incarceration and the subsequent difficulties connected with his employment. While the court does not question the work effort or work product of Brock's attorney, in the facts and circumstances of this case the court fixes the reasonable attorney fees for a total of sixty (60) hours at an adjusted reduced rate of $60.00 per hour for a total sum of $3,600.00. The court declines to assess a further fine or damages which could be considered punitive in connection with this proceeding, but finds that Barlow should pay to Brock the sum of $2,500.00 for the funds paid to H.F.C., $2,100.00 for Brock's incarceration and employment difficulties, $580.00 for the vacation days lost by Brock, $3,600.00 for legal fees, and $112.50 for the expert testimony in connection with the case. These amounts total $8,892.50.

Accordingly, judgment is awarded in favor of Brock against Barlow in the amount of $8,892.50, plus any court costs advanced in filing this proceeding together with interest as provided in 28 U.S.C. § 1961(a).

Further, the debt to H.F.C. upon which Brock was to hold Barlow harmless is found not to be an exception to discharge as alimony, maintenance or support and is discharged.

Judgments in accordance with this decision are entered in Adversary No. 3–81–0326 and Adversary No. 3–81–0381.